# IN THE UNITED STATES DISTRICT COURT
# FOR THE MIDDLE DISTRICT OF TENNESSEE
# NASHVILLE DIVISION

| | |
|---|---|
| JEFF GEORGE, )<br>)<br>    Plaintiff/Counter-Defendant, )<br>)<br>v. )<br>)<br>VOUGHT AIRCRAFT INDUSTRIES, INC., )<br>)<br>    Defendant/Counter-Plaintiff. ) | Civil Action No. 3:08-0787<br>Judge Echols / Knowles |

## REPORT AND RECOMMENDATION

### I. Introduction and Background

Pending before the Court is Defendant's "Motion for Summary Judgment as to Plaintiff's Claims Against Defendant." Docket No. 17. Along with that Motion, Defendant has filed, under seal, a supporting Memorandum of Law with attachments, including a Statement of Undisputed Material Facts, relevant excerpts and Exhibits from Plaintiff's Deposition, and Plaintiff's Response to Interrogatories 1, 2, and 5. Docket No. 19.

Plaintiff, proceeding *pro se* for the purposes of the instant Motion, filed a Response to Defendant's Statement of Undisputed Material Facts. Although Plaintiff filed a Response to Defendant's Statement of Undisputed Material Facts, he did not file a Response to the pending Motion. Docket No. 42. Plaintiff also filed his own "Statement of Undisputed Material Facts in Opposition of Defendant's Motion for Summary Judgment" (Docket No. 48), to which Defendant responded (Docket No. 56). Plaintiff additionally filed his Affidavit, as well as the

1

Affidavit of Mr. Howard Dean Gipson.[1]  Docket Nos. 49-50.

The instant lawsuit is related to a prior lawsuit between the parties, *Jeff George v. Vought Aircraft Industries, Inc.,* No. 3:04-0147, United States District Court for the Middle District of Tennessee.  The parties executed a Settlement Agreement in the prior action in August 2005.  In the instant case, Plaintiff essentially avers that Defendant made false representations that induced him to settle the prior lawsuit.  Plaintiff avers that the actions of Defendant amount to fraud, deceit, misrepresentation, and outrageous conduct.  Plaintiff seeks compensatory damages of one million dollars and punitive damages of one million dollars.

Plaintiff filed his Complaint in the case at bar on August 15, 2008, alleging in pertinent part as follows:

> 6. In 1985, Plaintiff suffered a serious injury to his back, the symptoms of which became chronic.  These symptoms caused Plaintiff to miss work on an irregular but unavoidable basis.  Plaintiff was terminated on June 4, 2003, and sought redress against Vought Aircraft Industries. Plaintiff's dispute with Vought was compromised and settled, as evidenced by this court's Order of August 24, 2005 in Docket Number 3:04-0417 (RE 19).
>
> 7. *Plaintiff agreed to settle his case based upon the representations by the Defendant that they would be moving their Company to Texas.*  Plaintiff was told that if he did not move to Dallas, Texas to work that he would not have a job.  Based upon that representation, Plaintiff agreed to settle his claims for violation of the Family and Medical Leave Act.
>
> 8. In February 2008, Plaintiff discovered that what the Defendant had represented to him about the plant moving to Dallas, Texas was false.  In fact, the Company did not move.
>
> 9. As a result of Defendant's false and misleading statements,

---

[1] The Court notes that these two "Affidavits" have not been sworn to, although they do not raise any material facts.

2

> Plaintiff settled his case and received a settlement for damages
> related to his FMLA lawsuit. In so doing, Plaintiff was unable to
> finish his career with the Defendant and receive his retirement.
> Further, he has suffered other significant damages, both economic
> and non-economic.
>
> 10. The actions of the Defendant amount to fraud, deceit,
> misrepresentation and outrageous conduct.

Docket No. 1 (emphasis added).

Defendant filed the instant Motion and supporting material on May 29, 2009. Docket Nos. 17, 19. In its submissions, Defendant argues:

> Plaintiff's claims against Defendant all fail as a matter of law.
> First, Plaintiff's claims are barred by a general release executed by
> Plaintiff in August 2005. Even if they were not barred by the
> general release, his claims fail because they are barred by the
> applicable statutes of limitation. Even if the claims were timely,
> they would still fail as a matter of law based on the undisputed
> material facts because Plaintiff cannot establish any of the required
> elements of his claims for "fraud, deceit, misrepresentation and
> outrageous conduct."

Docket No. 19.

## II. Undisputed Facts[2]

Pursuant to Fed. R. Evid. 201(b), (c), and (f), the Court takes judicial notice of the record in the previous lawsuit referred to above. Plaintiff filed his Complaint in that action on April 7, 2004, in the Chancery Court for Davidson County. Previous Case, Docket No. 1. That case was

---

[2] Although Plaintiff has filed a Response to Defendant's Statement of Undisputed Material Facts, his Response does not contain any citations to the Record, as required by Local Rule 56.01(c). Unsupported by the Record, Plaintiff's denials are explanations of his beliefs or actions. Because Plaintiff's Response does not comply with the Rules, pursuant to the Rules, the undersigned will deem the facts contained in Defendant's Statement of Undisputed Material Facts to be admitted as pertains to the Motion at bar. Unless otherwise noted, the following facts are in a form required by Fed. R. Civ. P. 56 and are undisputed for the purposes of the pending Motion.

3

removed to this Court on May 12, 2004. *Id*. In that action, Plaintiff raised a claim that he had been terminated on June 4, 2003, in violation of the Family and Medical Leave Act ("FMLA"). The parties subsequently requested a Settlement Conference before Magistrate Judge Brown, and he entered an Order setting a Settlement Conference for July 25, 2005. Previous Case, Docket Nos. 9, 10.

Plaintiff was represented by counsel throughout the previous action.

Plaintiff and Defendant participated in a Settlement Conference held at the Federal Courthouse in Nashville on July 25, 2005. Docket No. 19-2, Plaintiff's Dep., p. 8. Plaintiff was not working for Defendant at the time of the July 25 Settlement Conference. *Id.* at 19. During the July 25 Settlement Conference, Magistrate Judge Joe Brown, after some preliminary comments, put Plaintiff and his then-attorney in one room and Defendant's company officials and attorney in another room. *Id.* at 8. During the negotiation process, Magistrate Judge Brown went back and forth between the two rooms. *Id.* There were no direct conversations between Plaintiff and Defendant's attorney. *Id.*

During the negotiations, Magistrate Judge Brown came into the room with Plaintiff and Plaintiff's counsel and relayed an offer to reinstate Plaintiff in Vought's Dallas, Texas facility and to pay Plaintiff a specified sum of cash. *Id.* at 17. Plaintiff turned down this offer. *Id.* at 18. Neither Plaintiff nor his then-attorney asked Magistrate Judge Brown questions about the portion of the offer regarding reinstatement in Vought's Dallas, Texas facility. *Id.* Magistrate Judge Brown did not make any statements one way or the other as to whether Defendant would continue to operate a facility in Nashville and did not talk to Plaintiff about the status of the company's plans for the Nashville plant's closure. *Id.*

The written Settlement Conference Statement submitted by Plaintiff's then-attorney in advance of the mediation included a news article published in May 2005, reporting that Defendant's plans to close the Nashville facility had been delayed at least one year. *Id.* at 23-24.

Judge Brown subsequently entered an Order reflecting the fact that the Settlement Conference was held on July 25, 2005, but that the parties were unable to reach an agreement satisfactory to both sides. Previous Case, Docket No. 14.

On August 12, 2005, Judge Campbell entered an Order stating in part, "The Court has been advised that the parties have settled this matter." Previous Case, Docket No. 17.

Plaintiff and Defendant entered into a confidential Settlement Agreement, which was signed by Plaintiff and his then-attorney. Docket No. 19-2, p. 7; Docket No. 19-3. Plaintiff signed the Settlement Agreement on August 12, 2005, while Defendant signed it on August 25, 2005. *Id.* Prior to signing the Settlement Agreement, Plaintiff read the entire agreement at least twice, went over the Agreement with his then-attorney, and had the opportunity to ask his attorney any questions he might have had. Docket No. 19-2, p. 9, 11, 31. Plaintiff understood that in signing the Settlement Agreement, he was releasing any claims that occurred prior to the date the Settlement Agreement was signed. *Id.* at 11.

The Settlement Agreement provides in pertinent part as follows:

> **WHEREAS,** George and Vought, as a result of negotiations on their behalf by their respective counsel, have agreed to settle any and all claims between the parties, including any and all existing claims between them, in order to avoid the expense, delay and risk of litigation.
> . . .
> 2. George, on behalf of himself, his agents, representatives,

assigns, heirs, family members, executors, and administrators, hereby irrevocably releases and discharges Vought, which is defined to include its managers, attorneys, insurers, affiliates, parent companies, partners, subsidiaries, divisions, successors, assigns, stockholders, directors, officers, employees, former employees and agents, from any and all charges, claims, demands, liabilities, damages, grievances, causes of action or suits that George has, had, or may have against Vought that might be raised pursuant to or in reliance on any statute, constitution, ordinance, regulation, contract or common law theory based on any action taken or not taken by Vought prior to the date the Settlement Agreement and Release is signed by George, including any and all claims for costs, whether discretionary or not, or attorneys' fees. This release includes, but is not limited to, any clam under Title VII of the Civil Rights Act of 1964, the Age Discrimination in Employment Act and any state counterparts to such statutes against Vought or any of its agents for any events related to George's employment with and termination from Vought. This release does not affect any rights vested by George through his employment with Vought and its predecessors such as his vested defined benefit, pension benefits, etc.

3. This Release specifically includes, but is not limited to, any and all claims made or that could have been made in Case No. 04-1033-II filed by George against Vought in the Chancery Court of Davidson County, Tennessee, which matter was removed to the United States District Court for the Middle District of Tennessee and assigned Case No. 3:04-0417. . . .

. . .

6. George agrees and recognizes that his employment relationship with Vought has been permanently and irrevocably terminated and agrees that he will not in the future seek re-employment or independent contractor status with or by Vought or any agency or entity controlled, owned or operated by Vought, its parent companies, subsidiaries or partners. George acknowledges and recognizes that such entities have no obligation, contractual or otherwise, to rehire, re-employ or hire him in the future, and George agrees that it is fair and just under all of the relevant facts and circumstances that he be taken out of Vought's labor pool forever. . .

7. George acknowledges that: (a) he has been advised to consult

an attorney prior to signing this Agreement and has been
represented in this matter by the attorney of his choice, R. Steven
Waldron; (b) he has read carefully and had sufficient time to
consider this Settlement Agreement and Release and to consult
with his attorneys concerning its contents and effect; (c) he
understands the Settlement Agreement and Release and
acknowledges that he knowingly and voluntarily waived the rights
identified herein; and (d) he has determined that entering into this
Settlement Agreement and Release is in his best interest.

8. The parties acknowledge that this Settlement Agreement and
Release represents the entire understanding between the parties.

Docket No. 19-3, Settlement Agreement (emphasis in original).

Plaintiff's then-attorney also signed the Settlement Agreement, stating in part, "this Settlement Agreement and Release has been executed in my presence and with my approval." *Id.* Prior to settling the previous lawsuit, Plaintiff did not personally have any discussions with representatives of Defendant about its intentions to close its Nashville plant.[3] Docket No.

---

[3] Plaintiff made this admission during his deposition, which was taken on March 24, 2009. Defendant subsequently submitted, as part of its Statement of Undisputed Material Facts, the fact, "Plaintiff did not personally have any discussions with any representatives of Defendant about its intentions to close the plant in Nashville." Docket No. 19-1, p. 3. Contrary to his deposition testimony, Plaintiff denied that alleged fact stating:

Denied. I did not talk to anybody that worked for Vought. I did
talk to Judge Brown on July 25th at the settlement conference. He
was the one that made the offer to me for Vought during the
settlement conference. I would consider that Judge Brown to be
[*sic*] Vought's representative when he made the offer of
reinstatement to me.

Docket No. 42, p. 3.

Plaintiff also testified as follows in his deposition:

Q. [By Mr. Frazier] Okay. Did Judge Brown make any statements
to you one way or the other as to Vought would be an ongoing
operation in Nashville?

7

19, p. 21. Plaintiff was not employed by Defendant during discussions between Defendant and the local Union about shutting down the plant in Nashville. Docket Entry No. 19-2, Plaintiff's Dep., 20:16-21:1. Plaintiff further testified during his deposition:

> Q. [By. Mr. Frazier] All right. So did you have as of August 12 – well, let's move back to July 25, 2005. At the time that you agreed with Vought to settle your case, do you have any knowledge of Vought's intent to close its plant at that time?
>
> A. I just stated that.
>
> Q. Okay. Well, I must have misunderstood you.
>
> A. Well, in the news, Channel 2, 4, and 5 was saying they were going to close the plant and move it.
>
> Q. Okay.
>
> A. And then what articles from The Tennessean that my Mom give me was backing that up. Everything was in line; that they were closing and moving.

Docket No. 19-2, p. 23.

Plaintiff has not supplied any evidence as to the specific content of these media reports. But Plaintiff does not have any evidence to suggest that, while making any alleged statements to the press about Defendant's intention to close the Nashville facility, Defendant actually intended at the time to keep the facility open. Docket No. 19-2, Plaintiff's Dep., at 73:1-22, 77:8-13, 78:9-16.

All communication that Plaintiff has had with any current or former employee of Defendant, which Plaintiff contends supports his claims in this litigation, occurred in 2006 or

---

> A. No.

Docket No. 19-2, p. 18.

8

later (at least four months after Plaintiff signed the Settlement Agreement). Docket No. 19-4, Plaintiff's Response to Interrogatory No. 2.[4]

Defendant also submitted the following statement as an undisputed fact:

> The Settlement Agreement provides: "Whereas George and Vought, as a result of negotiations on their behalf by their respective counsel, have agreed to settle any and all existing claims between them, in order to avoid the expense, delay, and risk of litigation."

Docket No. 19-1, p. 4. Plaintiff responded:

> Admitted in part and denied in part. All claims as far as the lawsuit was concerned.

Docket No. 42, p. 3.

Plaintiff testified that his claim in the instant case is misrepresentation, rather than outrageous conduct. Docket No. 19-2, Plaintiff's Dep., 36:15-22. Plaintiff testified that he suffered the following damages as a result of the alleged misrepresentation: (1) his "retirement was stolen" from him; (2) his insurance benefits ceased and he had to rely on his wife's health insurance which was not as good as his had been; (3) he has spent time representing himself in this litigation; (4) he has had "a lot of sleepless nights"; (5) he believes it makes him "look bad" when someone asks "are you working somewhere" and he says "no"; and (6) he has been enduring pain because he has not been getting "the proper medical care" that he would have received if he had had his insurance. *Id*. at 36:23-39:4.

Finally, it should be noted that, while Plaintiff is proceeding pro se with regard to his claims against Defendant, Plaintiff was represented by counsel in the instant action when it was

---

[4] Plaintiff's Interrogatory Responses are not sworn to.

9

filed on August 15, 2008. Docket No. 1. Ten days after the instant action was filed, Plaintiff's counsel filed a Motion to Withdraw (Docket No. 5), which was subsequently granted (Docket No. 6).[5]

## III. Analysis

### A. Local Rules 7.01(b) and 56.01(c) and (g)

Local Rule 7.01(b) states, in pertinent part:

> **b. Response.** Each party opposing a motion shall serve and file a response, memorandum, affidavits and other responsive material not later than ten (10) days after service of the motion, except, that in cases of a motion for summary judgment, that time shall be twenty (20) days after the service of the motion, unless otherwise ordered by the Court. Failure to file a timely response shall indicate that there is no opposition to the motion.

Defendant filed the pending Motion on May 29, 2009. Docket Entry No. 17. Plaintiff failed to respond to the Motion itself.

Additionally, with respect to Motions for Summary Judgment specifically, Local Rules 56.01(c) and (g) state, in pertinent part:

> **c. Response to Statement of Facts.** Any party opposing the motion for summary judgment must respond to each fact set forth by the movant by either (I) agreeing that the fact is undisputed; (ii) agreeing that the fact is undisputed for the purpose of ruling on the motion for summary judgment only; or (iii) demonstrating that the fact is disputed. *Each disputed fact must be supported by a citation to the record. ...*
> . . .
> **g. Failure to Respond.** Failure to respond to a moving party's statement of material facts, or a non-moving party's statement of additional facts, within the time periods provided by these Rules shall indicate that the asserted facts are not disputed for the

---

[5] Plaintiff is represented by counsel with regard to Defendant's counterclaim against him, but that fact is not relevant to the issues raised in the instant Motion.

purposes of summary judgment.

Local Rule 56.01(c) and (g) (emphasis added).

Although Plaintiff failed to respond to the instant Motion, Plaintiff did respond to Defendant's Statement of Undisputed Material Facts. Docket No. 42. As has been noted, however, Plaintiff's Response to Defendant's Statement of Undisputed Material Facts lacks citations to the Record and is therefore not in compliance with the Local Rules.

Plaintiff has additionally filed his own Statement of Undisputed Material Facts (Docket No. 48), to which Defendant has responded (Docket No. 56). Plaintiff's own Statement of Undisputed Material Facts cites to "Department of Labor files," "My Affidavit," "Gipson's Affidavit" and "FMLA Part 825.700."

## B. Motion for Summary Judgment

It would be inappropriate to grant Defendant's Motion solely on the ground that Plaintiff has failed to respond. *See Stough v. Mayville Community Schools*, 138 F.3d 612, 614 (6th Cir. 1998). As the Sixth Circuit has stated:

> [A] district court cannot grant summary judgment in favor of the movant simply because the adverse party has not responded. The Court is required, at a minimum, to examine the movant's Motion for Summary Judgment to ensure that he has discharged [his initial] burden ... The federal rules require that the party filing a Motion for Summary Judgment "always bears the burden of demonstrating the absence of a genuine issue as to a material fact."

*Id.* (citations omitted). The Court will, therefore, consider whether Defendant has met its burdens under the appropriate summary judgment standards discussed below.

Under Fed. R. Civ. P. 56(c), summary judgment is appropriate only "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if

11

any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." A dispute is "genuine" only if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S. Ct. 2505, 2510, 91 L. Ed. 2d 202 (1986).

In order to prevail on a Motion for summary judgment, the moving party must meet the burden of proving the absence of a genuine issue as to material fact concerning an essential element of the opposing party's claim. *Celotex v. Catrett*, 477 U.S. 317, 323, 106 S. Ct. 2548, 2553, 91 L. Ed. 2d 265 (1986); *Street v. J.C. Bradford & Co.*, 886 F.2d 1472, 1477 (6th Cir. 1989). In determining whether the moving party has met its burden, the Court must view the evidence in the light most favorable to the nonmoving party. *Matsushita Electric Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 587, 106 S. Ct. 1348, 1356, 89 L. Ed. 2d 538 (1986).

Fed. R. Civ. P. 56 provides that the nonmoving party may not rest upon the mere allegations or denials of his or her pleading, but his or her response, by affidavits or otherwise, must set forth specific facts showing that there is a genuine issue for trial. If a nonmoving party, however, fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial, there is no genuine issue as to any material fact because a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial. *Celotex*, 477 U.S. at 322-23, 106 S. Ct. at 2552, 91 L. Ed. 2d at 273. When this occurs, the moving party is entitled to summary judgment as a matter of law. *Id.* at 322-23, 106 S. Ct. at 2552; *Williams v. Ford Motor Co.,* 187 F.3d 533, 537-38 (6th Cir. 1999).

12

**C. The Case At Bar**

While Defendant seeks Summary Judgment on several grounds, the Court need discuss only one. Because the basis of the Court's jurisdiction in the instant action is diversity of citizenship, the Court applies the substantive law of Tennessee. *Erie R.R. Co. v. Tompkins,* 304 U.S. 64 (1938).

A Settlement Agreement and Release is a contract and is, therefore, governed by contract law. *Richland Country Club, Inc. v. CRC Equities, Inc.,* 832 S.W.2d 554, 557 (Tenn. Ct. App. 1991). A valid contract can be voided or rescinded on the basis of fraud or misrepresentation. As the Tennessee Supreme Court has stated:

> An individual induced by fraud to enter into a contract may elect between two remedies. He may treat the contract as voidable and sue for the equitable remedy of recision or he may treat the contract as existing and sue for damages at law under the theory of "deceit."

*Vance v. Schulder*, 547 S.W.2d 927, 931 (Tenn. 1977).

Additionally, "Intentional misrepresentation derives its origin from the common law tort of deceit." *First Nat'l Bank v. Brooks Farms,* 821 S.W.2d 925, 927 (Tenn. 1991).

In his Complaint, Plaintiff does not seek to void or rescind the contract; instead, he seeks damages under a theory of misrepresentation or fraud. Thus, the Settlement Agreement remains in full force and effect.

The elements of a claim for fraud or misrepresentation under Tennessee law have been set forth as follows:

> In order to sustain a cause of action for fraudulent misrepresentation, the plaintiff must show that: 1) the defendant made a representation of an existing or past facts; 2) the representation was false when made; 3) the representation was in

13

regard to a material fact; 4) the false representation was made
either knowingly or without belief in its truth or recklessly; 5)
plaintiff reasonably relied on the misrepresented material fact, and
6) plaintiff suffered damages as a result of the misrepresentation.

*Metro Govt. of Nashville and Davidson Co. v. McKinney*, 852 S.W.2d 233, 237 (Tenn. Ct. App. 1992).

It is readily apparent that Plaintiff has presented no evidence to support any of the six requisite elements to establish fraud or misrepresentation.

When a Court construes a release, as with any other contracts, the "cardinal rule . . . is to ascertain the intention of the parties and to give effect to that intention, consistent with legal principles." *Bob Pearsall Motors, Inc. v. Regal-Chrysler Plymouth, Inc.,* 521 S.W.2d 578 (580) (Tenn. 1975) (citation omitted). The Tennessee Supreme Court, with regard to contract interpretation in general, has stated:

> In resolving a dispute concerning contract interpretation, our task is to ascertain the intention of the parties based upon the usual, natural, and ordinary meaning of the contract language. . . . A determination of the intention of the parties "is generally treated as a question of law because the words of the contract are definite and undisputed, and in deciding the legal effect of the words, there is no genuine factual issue left for a jury to decide."

*Planters Gin Co. v. Fed. Compress & Warehouse Co.,* 78 S.W.3d 885, 889-90 (Tenn. 2002) (citations omitted).

With regard to releases, the Tennessee Supreme Court has stated:

> In interpreting a release to determine whether a particular claim has been discharged, the primary rule of construction is that the intention of the parties shall govern, and this intention is to be determined with a consideration of what was within the contemplation of the parties when the release was executed, which in turn is to be resolved in the light of all of the surrounding facts and circumstances under which the parties acted.

14

*Jackson v. Miller*, 776 S.W.2d 115, 118 (Tenn. Ct. App. 1989) (citation omitted).

As discussed above, the following facts are undisputed. The parties engaged in a Settlement Conference on July 25, 2005. The parties executed a Settlement Agreement and Release nearly three weeks later, on August 12, 2005, in which they agreed to settle *any and all* claims between them arising from any conduct prior to the date the Settlement Agreement and Released was signed. Prior to signing the Settlement Agreement and Release, Plaintiff read it in its entirety at least twice, went over it with his attorney, and had the opportunity to ask his attorney any questions he had regarding the Agreement.

As discussed above, Plaintiff apparently argues that certain language in the Settlement Agreement (that he and Defendant had "agreed to settle any and all existing claims between them, in order to avoid the expense, delay and risk of litigation") applied only to "All claims as far as the lawsuit was concerned." The plain language of the Settlement Agreement, however, which is quoted above, provides that the Release "specifically includes, *but is not limited to*, any and all claims made or that could have been made in Case No.:04-1033-II filed by George against Vought in the Chancery Court of Davidson County, Tennessee, which matter was removed to the United States District Court for the Middle District of Tennessee and assigned Case No. 3:04-0417." (Emphasis added.).

Moreover, the Settlement Agreement provides, "The parties acknowledge that this Settlement Agreement and Release represents the entire understanding between the parties." There is nothing in the Settlement Agreement concerning the possible closure of Defendant's Nashville plant. Plaintiff, therefore, cannot be heard to argue that the Settlement Agreement was in any manner contingent upon Defendant's closing its Nashville plant. Plaintiff apparently

15

assumed, from news reports, that Defendant would close its Nashville plant. Insofar as the proof shows, Defendant never made any representation directly to Plaintiff that it would do so, either in connection with the settlement of the prior lawsuit or otherwise.

In signing the Settlement Agreement, Plaintiff released any and all claims between the parties for conduct arising prior to August 25, 2005 (the date of the last signature). Plaintiff was represented by counsel. To the extent that Plaintiff claims he was somehow misled during the Settlement Conference, the conduct of which Plaintiff complains occurred on July 25, 2005, approximately a month prior to the August 25, 2005 release date.[6] To the extent that Plaintiff claims he was somehow misled by news stories, it is undisputed that Plaintiff does not have any evidence to suggest that, while making statements to the press about Defendant's intention to close the Nashville facility, Defendant actually intended at that time to keep the facility open.

---

[6] As discussed above, Plaintiff takes the position that, during the Settlement Conference, Judge Brown was "Vought's representative." In his unsworn Affidavit, Plaintiff states:

> [At the Settlement Conference] Vought offered to reinstate my job plus [a sum of money] but the offer was reinstatement in Dallas, Tx and not in Nashville where I have worked since October 23, 1978. The offer was made through Judge Joe Brown and after he told me Vought's offer of reinstatement in Dallas plus [a sum of money], I made the comment, "I guess they are really going to close the plant." Then Judge Joe Brown told me that Vought said, "That if I wanted my job back it was going to Texas." *This is what convinced me that Vought was really going to close the Nashville plant and move work and employees to Dallas, Tx.* I took Vought at its word that my job in maintenance was moving to Texas and I would be reinstated if I took their offer.

Docket No. 49, p. 1 (emphasis added).

Plaintiff has no basis for an argument that Judge Brown was somehow a representative or agent of Defendant when he conducted the settlement conference, and it appears that Plaintiff's entire lawsuit it based simply upon assumptions that he made.

16

Plaintiff has failed to adduce any evidence in a form required by Fed. R. Civ. P. 56 to support his allegations. Plaintiff's claim of fraud fails, and the Settlement Agreement and release bars Plaintiff's claim.

## IV. Conclusion

For the foregoing reasons, the undersigned concludes, after viewing all the facts and inferences in favor of the nonmoving party, that there is no genuine issue as to any material fact and that Defendant is entitled to judgment as a matter of law. The undersigned therefore recommends that Defendant's Motion for Summary Judgment be GRANTED, and that Plaintiff's claims against Defendant be DISMISSED WITH PREJUDICE.[7]

Under Rule 72(b) of the Federal Rules of Civil Procedure, any party has ten (10) days after service of this Report and Recommendation in which to file any written objections to this Recommendation with the District Court. Any party opposing said objections shall have ten (10) days after service of any objections filed to this Report in which to file any response to said objections. Failure to file specific objections within ten (10) days of service of this Report and Recommendation can constitute a waiver of further appeal of this Recommendation. *See Thomas v. Arn,* 474 U.S. 140, 106 S.Ct. 466, 88 L. Ed. 2d 435 (1985), *reh'g denied*, 474 U.S. 1111 (1986); 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72.

 

E. CLIFTON KNOWLES
United States Magistrate Judge

---

[7] Defendant's counterclaim against Plaintiff (Docket No. 11) remains at issue.